**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

THE BOARDS OF TRUSTEES OF THE
INTERNATIONAL UNION OF
OPERATING ENGINEERS LOCAL 825
PENSION FUND, *et al.*,

Plaintiffs,

v.

LONG HILL CONTRACTORS, INC. *et al.*,

Defendants.

Civil Action No. 25-3839 (MAS) (TJB)

**MEMORANDUM OPINION**

**SHIPP, District Judge**

This matter comes before the Court on Defendants Long Hill Contractors, Inc. ("Long Hill") and KDP Developers, Inc.'s ("KDP," and collectively with Long Hill, "Defendants") Motion to Dismiss (ECF No. 6) Plaintiffs The Boards of Trustees of the International Union of Operating Engineers Local 825 Pension Fund (the "Trustees"), Operating Engineers Local 825 Apprenticeship Training & Re-Training Fund, Operating Engineers Local 825 Supplemental Unemployment Benefit Fund, Operating Engineers Local 825 Saving Fund, and Operating Engineers Local 825 Profit Sharing Fund f/k/a Operating Engineers Local 825 Annuity Fund's (collectively, "Plaintiffs") Complaint (ECF No. 1). Plaintiffs opposed (ECF No. 8), and Defendants replied (ECF No. 9). The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to Local Civil Rule 78.1(b). For the reasons stated below, the Court denies Defendants' Motion to Dismiss.

## I.    **BACKGROUND**[1]

### A.    **Factual Background**

This is a civil action brought pursuant to Sections 502(a)(3) and 515 of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1132(a)(3) and 1145, and Section 301 of the Labor Management Relations Act (the "LMRA"), 29 U.S.C. § 185, as a result of purported violations of ERISA and a collective bargaining agreement. (Compl. ¶ 1, ECF No. 1.) The Trustees are trustees of the following jointly-administered, multi-employer, labor management trust funds: Operating Engineers Local 825 Pension Fund; Operating Engineers Local 825 Welfare Fund; Operating Engineers Local 825 Apprenticeship Training and Re-Training Fund; Operating Engineers Local 825 Supplemental Unemployment Benefit Funds; and Operating Engineers Local 825 Profit Sharing Fund f/k/a Operating Engineers Local 825 Annuity Fund (collectively, the "Funds"). (*Id.* ¶ 4.) The Funds are established and maintained pursuant to collective bargaining agreements in accordance with Sections 302(c)(5) and (c)(6) of the LMRA. (*Id.* ¶ 5.) Each of the Funds is an employee benefit plan pursuant to ERISA, and a multi-employer plan pursuant to ERISA. (*Id.*) The Funds are also maintained pursuant to Agreements and Declarations of Trust (the "Trust Agreements") for the purposes of collecting and receiving contributions from employers who are obligated by collective bargaining agreements with the International Union of Operating Engineers Local 825 ("Local 825") to contribute to the Funds on behalf of employees performing work covered by the collective bargaining agreements. (*Id.* ¶ 6.) Pursuant to the Trust Agreements, the Trustees promulgated the Employer Contribution Collection Policy and Procedures (the

---

[1] For the purpose of considering the instant motion, the Court accepts all factual allegations in the Complaint as true. *See Phillips v. County of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008).

"Collection Policy") setting forth additional policies and procedures for the purposes of collecting and receiving contributions from employers. (*Id.* ¶ 7.)

Long Hill is a party to the Collective Bargaining Agreement (the "CBA") with Local 825, "covering workers engaged in the operation of power equipment" ("Covered Work") as defined in the CBA. (*Id.* ¶ 14.) The CBA requires, among other things, Long Hill to: (1) make contributions to the Funds in specified amounts on behalf of its employees performing Covered Work; (2) abide by the Trust Agreements and Collection Policy; and (3) agree to execute a collective bargaining agreement with Local 825 covering "any subsidiary corporation or any separate corporation engaged in construction work which Long Hill or its officers have formed, may form[,] or have a direct or indirect interest therein." (*Id.* ¶¶ 15-19.) Long Hill's only employee is David Perna; its sole source of revenue is consistent, regular deposits from KDP; it does not generate income from construction services or the performance of Covered Work; and it uses KDP's office space, principal accountant, and principal payroll preparer. (*Id.* ¶¶ 32, 39-43.) David Perna and his brother, Kevin Perna, hold ownership interests in both KDP and Long Hill. (*Id.* ¶ 38.) For both KDP and Long Hill, Kevin Perna has authority over employees, personnel, and management policies. (*Id.* ¶¶ 33-36.) Kevin Perna also has the authority to control labor relations policy and serves as the labor relations representative for both KDP and Long Hill. (*Id.* ¶ 37.)

Plaintiffs allege that KDP performed Covered Work and that both Long Hill and KDP failed to make the required contributions to the Funds—breaching the CBA and Section 515 of ERISA—and seek judgment against Defendants in the amount of delinquent contributions plus liquidated damages, interest, attorneys' fees, and costs. (*Id.* ¶¶ 53-59, 64-69, 73-78.)

### B.    Procedural Background

Plaintiff filed the Complaint on May 5, 2025, asserting three causes of action: (1) violation of the CBA and ERISA based on Long Hill's delinquent contributions against Long Hill ("Count One"); (2) KDP's liability for Long Hill's delinquent contributions in violation of the CBA and ERISA based on the "single employer" theory against KDP ("Count Two"); and (3) breach of the CBA pursuant to KDP's delinquent contributions against KDP ("Count Three"). (*See generally* Compl.) Defendants subsequently filed the instant Motion to Dismiss. (Mot. to Dismiss, ECF No. 6.) Plaintiffs opposed (Pls.' Opp'n Br., ECF No. 8) and Defendants replied (Defs.' Reply Br., ECF No. 9).

## II.    LEGAL STANDARD

### A.    Lack of Subject Matter Jurisdiction

Federal courts are courts of limited jurisdiction, meaning that for a federal court to hear a case, it must have jurisdiction over the issue, such as diversity or federal question jurisdiction. *Mack v. Six Flags Great Adventure, LLC*, No. 23-3813, 2024 WL 69879, at *2 (D.N.J. Jan. 5, 2024). To satisfy the jurisdictional requirements of federal question jurisdiction, a plaintiff must assert a claim that "aris[es] under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.

Under Federal Rule of Civil Procedure[2] 12(b)(1), a defendant may move to dismiss a matter for lack of subject matter jurisdiction. *Wongus v. Corr. Emergency Response Team*, 389 F. Supp. 3d 294, 298 (E.D. Pa. 2019). "[I]t is the plaintiff who bears the burden of proving that the federal court has jurisdiction." *McCracken v. Murphy*, 129 F. App'x 701, 702 (3d Cir. 2005) (citations

---

[2] All references to "Rule" or "Rules" hereafter refer to the Federal Rules of Civil Procedure.

omitted); *see also Wright v. N.J./Dep't of Educ.*, 115 F. Supp. 3d 490, 495 (D.N.J. 2015) ("It is well-settled that the plaintiff bears the burden of establishing subject[-]matter jurisdiction in order to defeat a motion under Rule 12(b)(1)." (citations omitted)). In considering dismissal for lack of subject-matter jurisdiction, a district court's focus is not on whether the factual allegations entitle a plaintiff to relief, but rather on whether the court has jurisdiction to hear the claim and grant relief. *Maertin v. Armstrong World Indus., Inc.*, 241 F. Supp. 2d 434, 445 (D.N.J. 2002) (citing *New Hope Books, Inc. v. Farmer*, 82 F. Supp. 2d 321, 324 (D.N.J. 2000)).

"A district court has to first determine, however, whether a Rule 12(b)(1) motion presents a 'facial' attack or a 'factual' attack on the claim at issue, because that distinction determines how the pleading must be reviewed." *Const. Party of Pa. v. Aichele*, 757 F.3d 347, 357 (3d Cir. 2014) (citation omitted). Under a facial attack, the movant challenges the legal sufficiency of the claim, and the court considers only "the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff." *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000); *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977) ("The facial attack does offer similar safeguards to the plaintiff [as a Rule 12(b)(6) motion]: the court must consider the allegations of the complaint as true."). The Court, under a facial attack, "may dismiss the complaint only if it appears to a certainty that the plaintiff will not be able to assert a colorable claim of subject[-]matter jurisdiction." *D.G. v. Somerset Hills Sch. Dist.*, 559 F. Supp. 2d 484, 491 (D.N.J. 2008) (citations omitted). Under a factual attack, however, the challenge is to the trial court's "very power to hear the case." *Mortensen*, 549 F.2d at 891. Thus, "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional

claims." *Id.* Moreover, in a factual attack, "the court may consider and weigh evidence outside the pleadings to determine if it has jurisdiction." *Gould Elecs.*, 220 F.3d at 178.

### B.    Failure to State a Claim

Federal Rule of Civil Procedure 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

A district court conducts a three-part analysis when considering a motion to dismiss under Rule 12(b)(6). *See Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). First, the court must identify "the elements a plaintiff must plead to state a claim." *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009). Second, the court must identify all of the plaintiff's well-pleaded factual allegations, accept them as true, and "construe the complaint in the light most favorable to the plaintiff." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). The court can discard bare legal conclusions or factually unsupported accusations that merely state the defendant unlawfully harmed the plaintiff. *See Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Third, the court must determine whether "the [well-pleaded] facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679). A facially plausible claim "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 210 (quoting *Iqbal*, 556 U.S. at 678). On a Rule 12(b)(6) motion, the "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

## III.    **DISCUSSION**

Defendants make two arguments in support of dismissing the Complaint: (1) the Court does not have subject matter jurisdiction over Counts One or Two because the National Labor Relations Board (the "NLRB") has primary jurisdiction to resolve claims under the single employer theory; and (2) Count Three should be dismissed because there is no written agreement between KDP or Long Hill and Local 825 requiring either Long Hill or KDP to pay the Funds for KDP employees. (Defs.' Moving Br. 4-10, ECF No. 6-1.) Defendants also argue that the Court should strike Plaintiffs' request for an audit of KDP. (*Id.* at 10-14.)

### A.    **Single Employer Theory – Counts One and Two**

Defendants argue that Counts One and Two should be dismissed because the NLRB has primary jurisdiction to resolve claims brought under the single employer theory. (*Id.* at 5.) Defendants further contend that Congress "did not give federal courts concurrent jurisdiction to make the initial determination of the appropriate bargaining unit" but "gave that power to the NLRB[,]" and that the single employer theory is a creation of the NLRB. (Defs.' Reply Br. 2-4.)

"The single employer doctrine . . . comes into play 'in the so-called double-breasted scenario, where two entities concurrently perform the same function and one entity recognizes the union and the other does not.'" *Boards of Trs. of Int'l Union of Operating Eng'rs Loc. 825 Welfare Fund v. Del. Valley Crane Rental, Inc.*, No. 17-8567, 2021 WL 11653263, at *8 (D.N.J. Feb. 12, 2021) (internal quotation marks omitted) (quoting *Gov't Dev. Bank for P.R. v. Holt Marine Terminal, Inc.*, No. 02-7825, 2011 WL 1135944, at *21 (E.D. Pa. Mar. 24, 2011)). "A single employer[] relationship exists where two nominally separate entities are actually part of a single integrated enterprise so that, for all purposes, there is in fact only a single employer." *Loc. Union 825 v. McRand Contracting Co.*, No. 07-4490, 2011 WL 2610220, at *3 (D.N.J. June 30, 2011)

(internal quotation marks omitted) (quoting *NLRB v. Browning-Ferris Indus. of Pa., Inc.*, 691 F.2d 1117, 1122 (3d Cir. 1982)). Consequentially, "[i]f the two entities are found to be a single employer, then they are considered as such for liability purposes." *Id.* (citation omitted). Courts have used the following factors to determine whether there is a single employer relationship: "(1) interrelation of operations between the two companies[;] (2) common management[;] (3) centralized control of labor relations[;] and (4) common ownership." *Id.* (citation omitted).

While the Third Circuit has not yet addressed whether federal courts have jurisdiction to make the initial determination that two employers are a single employer for purposes of liability pursuant to ERISA, several of its sister circuits have. The Ninth Circuit, for instance, has held that whether the bargaining unit is a single employer "must be decided by the NLRB in the first instance." *UA Loc. 343 United Ass'n of Journeymen & Apprentices of Plumbing & Pipefitting Indus, of U.S. & Canada, AFL-CIO v. Nor-Cal Plumbing, Inc.*, 48 F.3d 1465, 1470 (9th Cir. 1994). Under Ninth Circuit precedent, district courts "must defer to the NLRB, which has primary jurisdiction to determine whether the employees of both the union and non-union firms constitute an appropriate bargaining unit. Only if the NLRB finds that they constitute a single unit may the collective bargaining agreement with the union firm be extended to the non-union firm." *Id.* (citations omitted).

The Second and Fifth Circuits, however, have concluded "that where no application ha[s] been made to the NLRB on the issue[,]" "the district court has jurisdiction over the question [of] whether the defendants' employees constitute an appropriate single bargaining unit." *Brown v. Sandimo Materials*, 250 F.3d 120, 129 (2d Cir. 2001); *see also Carpenters Loc. Union No. 1846 of United Bhd. of Carpenters & Joiners of Am., AFL-CIO v. Pratt-Farnsworth, Inc.*, 690 F.2d 489, 522 (5th Cir. 1982) (holding that district courts "ha[ve] jurisdiction to address the issue of the

appropriateness of the bargaining unit" under a single employer theory), *amended*, (5th Cir. Dec. 8, 1982). In *Brown*, the Second Circuit, citing *Pratt-Farnsworth* and affirming the district court's determination that it had jurisdiction over the issue, explained that "where no application ha[s] been made to the NLRB on the issue, and where the determination of the single bargaining unit issue [i]s central to a question of contract interpretation, the bargaining unit issue [i]s appropriate for resolution by the district court." 250 F.3d at 129.

Here, Defendants present a facial challenge to the Court's jurisdiction to resolve the single employer theory asserted by Plaintiffs. (*See generally* Defs.' Moving Br. 4-6; Defs.' Reply Br. 1-5.) Plaintiffs, moreover, assert violations of the CBA, so the issue of whether Defendants are a single employer subjecting KDP to liability pursuant to the CBA is determinative. (*See* Compl. ¶¶ 49-80.) Defendants argue that this Court should follow the Ninth Circuit's decision in *Nor-Cal Plumbing* and dismiss Counts One and Two because, under that precedent, only the NLRB can make the determination that two entities are a single employer for purposes of claims asserted pursuant to ERISA and the LMRA. (Defs.' Moving Br. 4-6.) The Court declines to do so and instead follows the Second and Fifth Circuits in holding that the Court has jurisdiction to address the issue of the appropriateness of the bargaining unit under a single employer theory. *See Brown*, 250 F.3d at 129-30; *Pratt-Farnsworth*, 690 F.2d at 522. The Court, therefore, denies Defendants Motion to Dismiss based on lack of subject matter jurisdiction under Rule 12(b)(1).

Defendants also move to dismiss Counts One and Two pursuant to Rule 12(b)(6) based on the same single-employer-theory arguments. (Defs.' Moving Br. 8.) The Court finds that Plaintiffs have adequately alleged that Defendants constitute a single employer for purposes of liability pursuant to ERISA and the LMRA. *See Brown*, 250 F.3d at 129-30; *Pratt-Farnsworth*, 690 F.2d at 522.

Plaintiffs adequately allege that there is: (1) substantial interrelation of operations between Defendants; (2) common management of Defendants; (3) centralized control of labor relations between Defendants; and (4) common ownership of Defendants. (*See* Compl. ¶¶ 28, 31-34, 36-41, 47); *McRand Contracting Co.*, 2011 WL 2610220, at *3. Specifically, Plaintiffs allege that: (1) Long Hill does not have its own "expenses and revenue other than recurring deposits from KDP"; Defendants "share the same principal place of business . . . [and] telephone number"; (2) "Long Hill's business books and records are kept at KDP's office"; and (3) Defendants "have the same principal accountant and the same principal payroll preparer." (Compl. ¶¶ 28, 31, 32.) These allegations support the substantial interrelation of operations prong. *See Lyu v. Alfa Chemistry Inc.*, No. 23-7951, 2025 WL 1093134, at *4 (E.D.N.Y. Apr. 13, 2025). Plaintiffs also allege that Kevin Perna: (1) has the authority to supervise and control employees at both companies; (2) has the authority to create and manage policies for both companies; (3) is "actively involved in the day-to-day management and[] operations of [both companies]"; (4) "establishes or otherwise controls labor relations policy for" Defendants; "and [(5)] is the labor relations representative for both companies." (Compl. ¶¶ 33-34, 36-37.) These allegations satisfy both the common management and centralized control of labor relations prongs. *See Cent. States, Se. & Sw. Areas Pension Fund v. Norfolk S. Ry. Co.*, No. 16-708, 2019 WL 1929718, at *9 (W.D.N.Y. May 1, 2019); *Lyu*, 2025 WL 1093134, at *4. These allegations also support the substantial interrelation of operations prong. *See Lyu*, 2025 WL 1093134, at *4. Plaintiffs, moreover, allege that Kevin Perna and David Perna hold ownership interests in and are both corporate officers of Long Hill and KDP. (Compl. ¶ 38.) These allegations satisfy the common ownership prong. *See Lyu*, 2025 WL 1093134, at *4. Plaintiffs further allege that: (1) Long Hill's only source of revenue is deposits from KDP which cover the payroll obligations for David Perna including his contributions to the

Funds; (2) Long Hill does not pay rent for use of the office space; (3) Long Hill does not perform Covered Work; and (4) "any Covered Work [is] performed by David Perna . . . in his capacity as an employee or officer of KDP[.]" (*Id.* ¶¶ 39-41, 47.) These allegations further support the substantial interrelation of operations prong. *See Lyu*, 2025 WL 1093134, at *4. Plaintiffs, accordingly, sufficiently allege that Defendants are a single employer for purposes of liability pursuant to ERISA and the LMRA. *See Gesualdi v. Quadrozzi Equip. Leasing Corp.*, No. 11-115, 2016 WL 4487668, at *5 (E.D.N.Y. Aug. 3, 2016) (finding that plaintiffs stated a claim that defendants were a single employer for ERISA purposes because they adequately "alleged interrelation of operations, common management, centralized control of labor relations, and common ownership"), *R & R adopted*, No. 11-115, 2016 WL 7322333 (E.D.N.Y. Dec. 15, 2016), *aff'd*, 707 F. App'x 59 (2d Cir. 2017). The Court therefore also denies Defendants' Motion to Dismiss Counts One and Two under Rule 12(b)(6).

### B.    KDP's Delinquent Contributions – Count Three

Defendants argue that Count Three should be dismissed pursuant to Rule 12(b)(6) because the terms of the CBA's anti-dual shop clause do not bind KDP to the CBA but merely state that KDP agrees to sign a CBA with Local 825. (Defs.' Moving Br. 8-10.) Defendants also contend that the Funds do not have a third-party beneficiary interest so they cannot enforce the anti-dual shop clause. (Defs.' Reply Br. 7-9.)

To state a claim for breach of a collective bargaining agreement, a plaintiff must adequately allege: "(1) the existence of a valid contract; (2) a breach of that contract; and (3) resulting damages." *Trs. of Int'l Union of Painters & Allied Trades Dist. Council 711 Health & Welfare Fund v. Arata Expositions, Inc.*, No. 22-4056, 2025 WL 2813603, at *4 (D.N.J. Oct. 3, 2025). The anti-dual shop clause at issue here states that:

> [Long Hill] agrees that in consideration of . . . [Local 825] entering into the above [CBA] with [Long Hill], [Long Hill] will agree to execute a [c]ollective [b]argaining [a]greement with Local 825 covering any subsidiary corporation or any separate corporation engaged in construction work which [Long Hill] or its officers have formed, may form[,] or have a direct or indirect interest therein.
>
> It being the intent and purpose of this understanding that all construction operations which involve the use of Operating Engineers will be done by companies having an Agreement with Local [] 825 and [Long Hill] shall not utilize subsidiary corporations or other corporations in which the [Long Hill] or its officers have a direct or indirect interest to engage in non-Union construction activities with the effect of depriving Employees of [Long Hill], party to this [CBA], of work opportunities on the terms and conditions herein set forth.

(Ex. B to Defs.' Mot. to Dismiss, CBA Art. XXIII, ECF No. 6-2.)[3]

The Trust Agreement, moreover, explicitly provides that "[b]y entering into a [CBA] . . . the Employer agrees . . . to be bound by this Trust Agreement . . . and by all actions taken by the Trustees pursuant to this Trust Agreement[.]" (Ex. E to Defs.' Mot. to Dismiss, Trust Agreement

---

[3] "As a general matter, a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (citing *Angelastro v. Prudential-Bache Sec., Inc.*, 764 F.2d 939, 944 (3d Cir. 1985)). An exception to the general rule, however, is that a "document integral to or explicitly relied upon in the complaint may be considered without converting the motion [to dismiss] into one for summary judgment." *Id.* (alteration in original) (internal quotation marks omitted); *see Cope v. Soc. Sec. Admin.*, 532 F. App'x 58, 60 (3d Cir. 2013). While neither party explicitly requests the Court to consider the underlying contracts, Plaintiffs rely on them in their Complaint, and Defendants attached them to their Motion to Dismiss. (*See* generally Compl.; Ex. B-E to Defs.' Mot. to Dismiss, ECF No. 6-2.) Because the CBA and the Trust Agreements are integral to or explicitly relied on in the Complaint, the Court will consider these documents and the arguments the parties make relying on these documents. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1426.

§ 4.4, ECF No. 6-2.)[4] The Trust Agreement, moreover, permits the "Fund['s] legal counsel [to] file a collection action in the State or Federal court having jurisdiction over the matter." (*Id.* § 4.9.) The Trust Agreement further permits the Trustees to "commence and process lawsuits to enforce trust collections on behalf of the Trustees and other litigation." (*Id.* § 5.1.)

Here, Plaintiffs adequately allege: (1) the existence of a valid contract; (2) a breach of that contract; and (3) resulting damages. *First*, Plaintiffs have pled the existence of a valid contract— the CBA. (Compl. ¶¶ 14-20); *see Trs. of the N.J. B.A.C. Health Fund v. Bryant Caulking & Waterproofing, Inc.*, No. 15-8359, 2017 WL 784944, at *3 (D.N.J. Mar. 1, 2017) (finding that plaintiffs' allegations that there was a valid CBA was sufficient to satisfy the first element of a breach of contract claim). Although Defendants argue that the CBA does not apply to KDP, they do not dispute that Long Hill, and Local 825 are parties to a valid CBA. (*See generally* Defs.' Moving Br.; Defs.' Reply Br.)

*Second*, Plaintiffs adequately allege a breach of that CBA. *See Bryant Caulking*, 2017 WL 784944, at *3 (finding that plaintiffs' allegations that the defendant breached the terms of the CBA by failing to make required contributions to the Funds were sufficient to satisfy the second element of a breach of contract claim); *Laborers Int'l Union of N. Am. Loc. No. 199 Welfare, Pension, Apprenticeship & Training, Annuity & Laborers-Emps. Co-op. Educ. Tr. Funds of Delaware, Inc.*

---

[4] Defendants' argument that the Funds do not have standing to bring suit is without merit. The CBA specifically outlines, at minimum, Long Hill's obligation to pay into the Funds and that the Trust Agreements are part of the CBA and binding upon Long Hill. (*See, e.g.*, CBA Art. XII); *see also Agathos v. Starlite Motel*, 977 F.2d 1500, 1505 (3d Cir. 1992) (explaining that the funds at issue were "third-party beneficiaries of the collective bargaining agreement between" the employer and the union); *United Food & Com. Workers v. Super Fresh Food Markets Inc.*, No. 04-1226, 2008 WL 3874304, at *19 (D.N.J. Aug. 19, 2008) ("The Fund is a third party beneficiary to the relevant CBAs."), *aff'd in part sub nom.*, *United Food & Com. Workers Union & Participating Food Indus. Emps. Tri-State Health & Welfare Fund v. Super Fresh Food Markets, Inc.*, 352 F. App'x 721 (3d Cir. 2009).

*v. Ramco Sols.*, No. 11-4976, 2013 WL 4517935, at *3 (D.N.J. Aug. 26, 2013) (same). Specifically, Plaintiffs allege that the CBA provides that: (1) Long Hill agrees to execute a collective bargaining agreement with Local 825 covering any separate corporation engaged in construction work which it or its officers have formed; (2) "all construction operations which involve the use of 'Operating Engineers' will be done by companies having a [CBA] with Local 825"; and (3) "pursuant to the terms of the CBA , as well as the Trust Agreements . . . , Long Hill was required . . . to pay wages to its employees and pay contributions to the Funds on behalf of its employees performing Covered Work at the rates and times set forth in the CBA." (Compl. ¶¶ 19-21.) Plaintiffs further allege that: (1) "Long Hill and/or its officers have a direct and/or indirect interest in KDP"; (2) "KDP was and is a 'subsidiary' and/or 'separate' corporation of Long Hill and/or its officers . . . and is therefore bound by the terms of [the] CBA"; and (3) "[b]ecause KDP was and is a 'subsidiary' and/or 'separate' corporation . . . within the meaning of [the]  CBA . . . , KDP is also liable to the Funds for all outstanding contributions owed to the Funds for Covered Work performed by Long Hill." (*Id.* ¶¶ 73-74, 78.)

*Third*, Plaintiffs adequately allege resulting damages. *See John Hancock Mut. Life Ins. Co. v. King*, No. 96-4983, 1997 WL 373512, at *3 (D.N.J. Mar. 26, 1997) (finding that plaintiff's allegations that "it ha[d] suffered damages as a result of" defendant's breach of the collective bargaining agreement was sufficient to satisfy the third element of a breach of contract claim). Here, Plaintiffs allege that "the outstanding contribution" to the Funds have not been paid and as a result Plaintiffs "have suffered and will continue to suffer damages." (Compl. ¶¶ 79-80.)

Plaintiffs, accordingly, have sufficiently pled a breach of contract claim for delinquent contributions pursuant to the CBA. *See Trs. of Int'l Union of Painters & Allied Trades Dist. Council 711 Health & Welfare Fund, Vacation Fund, & Painters Dist. Council 711 Finishing*

14

*Trades Inst. v. Leo Constructing, LLC*, 718 F. Supp. 3d 436, 443 (D.N.J. 2024) (finding plaintiff pled a legitimate breach of contract claim where a defendant failed to make contributions to funds pursuant to a collective bargaining agreement); *Bryant Caulking*, 2017 WL 784944, at *3 (same). The Court, therefore, denies Defendants' Motion to Dismiss Count Three.

**C.      Plaintiffs' Requested Relief**

Defendants argue that Plaintiffs' request that the Court compel KDP to provide its books and records for an audit must be denied and that the Court should strike the request because the Collection Policy does not apply to KDP. (Defs.' Moving Br. 10-14.) The Court notes, however, that "it is generally inappropriate for the Court to limit the remedies available to [p]laintiffs on a motion to dismiss and [] it is preferable to assess the availability of various remedies after liability is established." *Crestwood Membranes, Inc. v. Constant Servs., Inc.*, No. 15-537, 2016 WL 659105, at *5 (M.D. Pa. Feb. 17, 2016) (second alteration in original) (quoting *Dicicco v. Citizens Fin. Grp., Inc.*, No. 15-267, 2015 WL 5302767, at *10 (E.D. Pa. Sep. 10, 2015)); *see also Williams v. Samsung Elecs. Am., Inc.*, No. 23-989, 2024 WL 1328133, at *10 (D.N.J. Mar. 28, 2024) ("[T]he Court will not address remedies at the motion to dismiss stage."); *Thorsen v. BCS Devs., LLC*, No. 24-4370, 2025 WL 965702, at *4 (D.N.J. Mar. 31, 2025) (explaining that "it is not the Court's role, in deciding a motion to dismiss, to make specific rulings with respect to the scope of damages available to the plaintiff" (citation omitted)). The Court therefore declines to strike Plaintiffs' requested relief at this stage.

## IV.    **CONCLUSION**

For the reasons set forth herein, Defendants' Motion to Dismiss is denied. The Court will issue an Order consistent with this Memorandum Opinion.

MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE

DATED: DECEMBER 17th, 2025